UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
JAMAL KIFAYEH,

               Plaintiff,

               **DECISION AND ORDER**
  -*against*-               14-CV-1683 (WFK)

CAROLYN W. COLVIN, Acting Commissioner
of Social Security,

               Defendant.
------------------------------------------------------------X
**WILLIAM F. KUNTZ, II, United States District Judge:**

This is a review of a denial of Disability Insurance Benefits ("DIB") by Carolyn W. Colvin, the Acting Commissioner of Social Security ("Commissioner"). Plaintiff Jamal Kifayeh ("Plaintiff") commenced this action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner which denied his application for DIB. Before the Court are motions for judgment on the pleadings from each party. For the reasons set forth below, the Commissioner's motion is GRANTED and Plaintiff's cross-motion is DENIED.

## FACTUAL AND PROCEDURAL HISTORY

Plaintiff is a sixty-year-old Muslim man who was born on May 15, 1954 in Jerusalem. Dkt. 16 ("R.") at 17, 31, 128. Plaintiff is a United States citizen. *Id.* at 31. He has a high-school education, which he received in Jerusalem. *Id.* at 17, 32. Plaintiff lives with his wife and two children; his older son supports the family. *Id.* at 32, 182, 198-212, *see also* 129. Until October 2010, Plaintiff worked as a stock clerk in a pet store. *Id.* at 36, 174, 177, 192. He left because he could not carry the boxes anymore. *Id.* at 36, 45, 177. Before working at the pet store, Plaintiff worked as a stock clerk at a supermarket for between six and eight years, and as a stock clerk at a deli between the supermarket and the pet store. *Id.* at 34-36, 174-75, 192.

Plaintiff has a medical history that includes COPD, anxiety, depression, osteoarthritis, a herniated disc, sleep apnea, sinusitis, right rotator cuff tear, and "(+)H-Pylori." *Id.* at 26; *see also*

1

*id.* at 223-24 (record of right shoulder surgery in 2008). He reports suffering from depression, sleep apnea, back pain, leg pain, and arthritis in his legs. *Id.* at 191. At the September 2012 hearing on his DIB application, Plaintiff complained about lower back pain and upper back pain, and indicated that he used to go to physical therapy back in 2011. *Id.* at 37-40. Plaintiff also indicated that he last sought psychiatric treatment in February 2011 and has not sought it since. *Id.* at 42-43. In addition to these complaints, Plaintiff reports having prescriptions for between eight and eleven medications to treat his asthma, insomnia, and depression. *Id.* at 217, 246, 279-80.

Plaintiff reports that he has no problem with his personal care. *Id.* at 186. He sometimes does laundry, although usually his wife does; the same goes for cooking. *Id.* at 43, 188, 203. He also goes to the mosque to pray three or four times a day. *Id.* at 44, 185, 199, 204, 207. In addition, Plaintiff reports that he can go out alone and that he shops for small grocery items once in a while. *Id.* at 184; *see also id.* at 204-05. He also reports he can count money, handle a savings account, and pay bills. *Id.* at 184-85.

Plaintiff filed an application for DIB on November 4, 2010, alleging that he has been disabled beginning May 15, 2010. R. at 10. Plaintiff's application was initially denied on March 31, 2011. *Id.* at 52. Plaintiff filed a written request for a hearing before an Administrative Law Judge ("ALJ") on May 3, 2011, and the hearing was held on September 11, 2012. *Id.* at 10, 28-51, 68-69. Plaintiff was represented by counsel. *Id.* at 6, 10, 30, 66-67, 122-25. ALJ Margaret A. Donaghy ("the ALJ") issued her unfavorable decision on October 25, 2012. *Id.* at 1, 7-9, 10-19. Plaintiff appealed the decision to the Appeals Council, which denied his request for review on January 13, 2014. *Id.* at 1.

On March 14, 2014, Plaintiff filed a complaint against the Commissioner pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner who denied his application for DIB. Dkt 1 ("Compl"). The Commissioner filed a motion for judgment on the pleadings on November 20, 2014. Dkt. 15 ("C's Memo"). Plaintiff cross-moved for judgment on the pleadings on November 14, 2014. Dkt. 13-1 ("P's Memo").

The Commissioner argues the Court should affirm the ALJ's determination that Plaintiff was not disabled because the ALJ's decision is supported by substantial evidence. C's Memo at 18-27. Plaintiff, on the other hand, argues that the Court should reverse the ALJ's decision, or at least remand it, because (1) the medical evidence in the record does not support a finding that Plaintiff can "meet all the exertional requirements of medium work" and (2) the ALJ's decision does not "reflect the full extent of psychological limitations." P's Memo at 8-9. The Court will discuss each of Plaintiff's arguments in turn.

## DISCUSSION

### I. Legal Standards

#### A. Standard of Review

When a claimant challenges the Social Security Administration's ("SSA") denial of disability benefits, the Court's function is not to evaluate *de novo* whether the claimant is disabled, but rather to determine only "whether the correct legal standards were applied and whether substantial evidence supports the decision." *Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004), *amended on reh'g*, 416 F.3d 101 (2d Cir. 2005); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . ."); *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009).

3

Substantial evidence is "more than a mere scintilla"; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of N.Y., Inc. v. NLRB*, 305 U.S. 197, 229 (1938)); *Moran*, 569 F.3d at 112. The substantial evidence test applies not only to the Commissioner's factual findings, but also to inferences and conclusions of law to be drawn from those facts. *See Carballo ex rel. Cortes v. Apfel*, 34 F. Supp. 2d 208, 214 (S.D.N.Y. 1999) (Sweet, J.). In determining whether the record contains substantial evidence to support a denial of benefits, the reviewing court must examine the entire record, weighing the evidence on both sides to ensure that the claim "has been fairly evaluated." *See Brown v. Apfel*, 174 F.3d 59, 62 (2d Cir. 1999) (internal quotation marks omitted) (citing *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983)).

It is the function of the SSA, not of the federal district court, "to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983) (citing *Richardson*, 402 U.S. at 399); *see also Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998). Although the ALJ need not resolve every conflict in the record, "the crucial factors in any determination must be set forth with sufficient specificity to enable [the reviewing court] to decide whether the determination is supported by substantial evidence." *Calzada v. Asture*, 753 F. Supp. 2d 250, 268-269 (S.D.N.Y. 2010) (Sullivan, J.) (internal quotation marks omitted) (citing *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984)).

To fulfill this burden, the ALJ must "adequately explain [her] reasoning in making the findings on which [her] ultimate decision rests" and must "address all pertinent evidence." *Kane v. Astrue*, 942 F. Supp. 2d 301, 305 (E.D.N.Y. 2013) (Kuntz, J.) (quoting *Calzada*, 753 F. Supp. 2d at 269). "[A]n ALJ's failure to acknowledge relevant evidence or to explain its implicit

rejection is plain error." *Id.* (internal quotation marks and citations omitted). Remand is warranted when "there are gaps in the administrative record or the ALJ has applied an improper legal standard." *Rosa v. Callahan*, 168 F.3d 72, 83 (2d Cir. 1999).

### B. Statutory and Regulatory Standards

In order to qualify for DIB, the Social Security Act requires the claimant to prove he has a disability. *See* 42 U.S.C. § 423(a)(1)(E). "Disability" is defined in the Social Security Act as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner must evaluate whether an individual qualifies as disabled using a five step process promulgated by the Social Security Administration ("SSA"):

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience. . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

*Salmini v. Comm'r of Soc. Sec.*, 371 F. App'x 109, 111-12 (2d Cir. 2010) (brackets and ellipses in original) (citations omitted); *see also* 20 C.F.R. § 404.1520. The claimant bears the burden of proof at steps one through four in the analysis. *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013) (per curiam) (citations omitted). At step five, the burden shifts to the Commissioner to prove that there are jobs in the national economy that the claimant could perform even with his

5

disability or disabilities. *Salmini*, 371 F. App'x at 112 (citation omitted); *see also Selian*, 708 F.3d at 418.

## II. The ALJ's Decision

On October 25, 2012, the ALJ denied Plaintiff's application for DIB. R. at 7-19. Applying the five step process promulgated by the SSA, the ALJ determined at step one that Plaintiff had engaged in substantial gainful activity between May and October 2010 because Plaintiff's earnings report showed he earned $4,200 that quarter. *Id.* at 12. The ALJ therefore only evaluated the period after October 2010 in determining whether Plaintiff was disabled. *Id.*

At step two, the ALJ determined that Plaintiff suffered from three severe impairments: "episodic low back pain; right knee and ankle pain; [and] dysthymic disorder[.]" *Id.* (internal citations omitted). The ALJ found that Plaintiff also suffered two non-severe physical impairments, namely hypertension and asthma. *Id.* at 13.

At step three, the ALJ found that none of Plaintiff's three severe impairments, neither individually nor in combination, "me[t] or medically equal[ed] the severity of one of the listed impairments." *Id.* Addressing Plaintiff's mental impairment, the ALJ noted that "the record does not document neurological abnormalities, such as motor loss, sensory loss, or muscle weakness." *Id.* The ALJ further found that Plaintiff suffered only a mild restriction in activities of daily living, mild difficulties in social functioning, and moderate difficulties with regard to concentration, persistence, or pace. *Id.* at 13-14. The ALJ credited the findings of consultative examiner Dr. Jemour Maddux, who noted Plaintiff reported walking to his mosque four times a day as well as showering and dressing himself. *Id.* at 13. The ALJ discounted the report of consultative examiner Dr. Michael Kushner because "the record outside of the SSA consultative

6

examination[] does not [indicate] significant problems with attention and concentration or memory." *Id.* at 14.

At step four, the ALJ determined that Plaintiff had "the residual functional capacity [("RFC")] to perform medium work. He is able to lift and carry 50 lbs. occasionally and 25 lbs. frequently, can stand and walk for 6 hours, and can sit for 6 hours in an eight hour day. Furthermore, he is able to understand, remember, and carry out simple instructions, and maintain attention and concentration for simple, routine work." *Id.* at 14 (internal citations omitted). The ALJ discounted Dr. Yevgenlya Margulis's report that Plaintiff "was unable to perform even a sedentary job and that his limitations were expected to last 12 months or longer" because the opinion was "wholly unsupported by clinical or laboratory findings." *Id.* at 15. Instead, the ALJ gave some weight to the report by Dr. Rahel Eyassu, a consultative examiner, who found that Plaintiff "should avoid heavy lifting and had otherwise only mild or minimal limitations." *Id.* at 15-16. The ALJ also accepted the objective findings of Dr. Vinod Thukral, another consultative examiner, which corroborated Dr. Eyassu's findings, but gave no weight to Dr. Thukral's "wholly unsupported opinion" that Plaintiff "was limited to less than sedentary work." *Id.* at 16.

In regards to Plaintiff's mental impairments under step four, the ALJ noted that Dr. Ashraf Elshafei's, Plaintiff's treating physician, most recent treatment records indicate "signs of improvement" and reflect that Plaintiff "was able to function normally on most days." *Id.* The ALJ also discussed Dr. Maddux's report again, and determined Plaintiff was "limited . . . to simple work" based on Dr. Maddux's opinion that Plaintiff's "attention and concentration were impaired." *Id.* The ALJ then referenced Dr. Kushner's opinion, but again discounted it because "it is inconsistent with the opinion of Dr. Maddux's report and the treating source's letter indicating that [Plaintiff's] functioning was mostly normal." *Id.* at 17. Lastly, the ALJ

7

determined that Plaintiff's testimony was incredible because his demeanor was evasive and his testimony did not reflect his treatment history or medication usage. *Id.* Ultimately, the ALJ found the above described RFC was supported by the medical evidence of record. *Id.* The ALJ therefore determined that Plaintiff could not perform his past relevant work. *Id.*

Lastly, at step five, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff could perform. *Id.* at 18. Specifically, based on testimony of a vocational expert, the ALJ found that Plaintiff could perform the jobs of meat clerk, kitchen helper, and industrial cleaner. *Id.* Therefore, the ALJ held that Plaintiff had not been under a disability from May 15, 2010 through the date of her decision. *Id.* at 19.

### III. Analysis

Plaintiff argues that the ALJ erred in denying Plaintiff's application for DIB because the ALJ's decision is not supported by substantial evidence. P's Memo at 6-9. Specifically, Plaintiff contends (1) the medical evidence in the record does not support a finding that Plaintiff can "meet all the exertional requirements of medium work" and (2) the ALJ's decision does not "reflect the full extent of psychological limitations." *Id.* at 8-9. The Court will address each argument in turn.

#### A. Substantial Evidence and Plaintiff's Physical Exertional Limitations

Plaintiff first argues that there is not substantial evidence in the record to support the ALJ's determination that Plaintiff could perform medium work, given Plaintiff's physical exertional limitations. *Id.* at 8-9. Specifically, Plaintiff points out that an MRI indicated Plaintiff has "multiple significant spinal disorders" and that "no physician states or implies that [Plaintiff] is capable of carrying 50-pound loads." *Id.*

8

"To determine the physical exertion requirements of work in the national economy, [the SSA] classif[ies] jobs as [either] sedentary, light, medium, heavy, [or] very heavy." 20 C.F.R. § 404.1567. The SSA defines "medium work" as that which "involves listing no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, [the SSA may] determine that he or she can also do sedentary and light work." 20 C.F.R. § 404.1567(c). "Medium work also involves standing and/or walking for six hours in an eight-hour workday, and sitting for the remaining time. Use of the arms and hands is necessary to grasp, hold, and turn objects, as opposed to the finer activities in much sedentary work, which require precision use of the fingers as well as use of the hands and arms. Finally, in most medium jobs, being on one's feet for most of the workday is critical." *Krupnick v. Colvin*, 13-CV-3992, 2015 WL 1298626, at *7 (E.D.N.Y. Mar. 23, 2015) (Irizarry, J.) (internal quotation marks, brackets, and citations omitted).

In making the RFC determination that Plaintiff could perform medium work, the ALJ relied on the opinions of Dr. Eyassu and Dr. Thukral. R. at 15-16. Specifically, the ALJ noted Dr. Eyassu's findings that Plaintiff had a normal gait, normal stance, and no assistive devices; that his "cervical spine showed full flexion, extension, lateral flexion, and full rotary movements bilaterally, and that his lumbar forward flexion was 70 degrees, with full extension, lateral and rotary movement." *Id.* at 15. The ALJ further commented "Dr. Thukral corroborated the findings of Dr. Eyassu and also noted negative straight leg raising, equal reflexes, and intact dexterity." *Id.* at 16. The ALJ decided to credit Dr. Eyassu's ultimate conclusion but did not credit Dr. Thukral's ultimate conclusion because only the former was supported by the medical evidence. *Id.* at 15-16. The ALJ also discredited Dr. Margulis's opinion because it too was unsupported. *Id.* at 15.

The Court finds that the ALJ's physical RFC determination is supported by substantial evidence. *See, e.g., Brown*, 174 F.3d at 62 (2d Cir. 1999) (citation omitted). While Plaintiff's son reported that his father could lift no more than ten pounds, this is not medical evidence. R. at 208. Dr. Eyassu reported Plaintiff's gait was normal, he could squat to 70% of normal, and he required no help rising from a chair, changing, or getting on or off the exam table. *Id.* at 247. Further, Dr. Eyassu reported full movement of Plaintiff's spine, except that lumbar forward flexion was limited to 70 degrees. *Id.* at 248. Dr. Eyassu found Plaintiff experienced pain in his right knee, but found no muscle atrophy there or anywhere else. *Id.* He also reported 5/5 grip strength bilaterally and intact dexterity of the hands and fingers. *Id.* Ultimately, Dr. Eyassu gave Plaintiff a good prognosis and reported "[m]inimal limitation on repetitive bending, mild limitation on repetitive squatting, kneeling, crawling [and to] [a]void heavy lifting." *Id.* at 249. These findings are consistent with a medium RFC.

Dr. Thukral's report also found that Plaintiff's gait was normal, that he could perform the tasks of sitting, standing, changing, and getting on the exam table without assistance, and further found that Plaintiff could do a full squat. *Id.* at 280. Dr. Thukral also found no limitations of the spine, including full flexion of the lumbar spine, and full range of motion of the Plaintiff's shoulders, elbows, forearms, wrists, hips, knees, and ankles. *Id.* at 281. Dr. Thukral agreed with Dr. Eyassu that Plaintiff had intact hand and finger dexterity and 5/5 grip strength bilaterally. *Id.* Dr. Thukral gave Plaintiff a fair prognosis, and cautioned that Plaintiff has "no limitations for sitting or standing, but has mild to moderate limitations for pulling, pushing, lifting, carrying, or any other such related activities due to multiple joint pains." *Id.* at 282.

Dr. Thukral, however, then completed a check box assessment indicating that Plaintiff could never lift up to ten pounds, never carry up to ten pounds, and never reach, handle, finger,

feel, or push/pull with either hand, without further explanation. *Id.* at 283, 285. He also checked boxes indicating Plaintiff could never operate foot controls with either foot, and that he could never climb stairs, ladders, ramps, or scaffolds, never balance, never stoop, never kneel, never crouch, and never crawl. *Id.* at 285. Yet Dr. Thukral also checked boxes indicating that Plaintiff could sit, stand, and walk up to eight hours without interruption and for eight hours total in an eight hour workday. *Id.* at 284. Further, Dr. Thukral indicated that Plaintiff could shop, travel without a companion or other assistance, use public transportation, walk a block, climb a few steps, prepare a meal, care for his personal hygiene, and sort, handle, and use paper files. *Id.* at 288. Ultimately, Dr. Thukral's box checking is internally inconsistent. For example, at one point, Dr. Thukral claims Plaintiff can never climb stairs, but at another point states Plaintiff can climb a few steps at a reasonable pace. *Compare id.* at 285 *to id.* at 288. Further, at one point Dr. Thukral claims Plaintiff can never reach, handle, finger, or feel, but at another point states Plaintiff can sort, handle, or use filed. *Compare id.* at 285 *to id.* at 288. In addition, Dr. Thukral's box checking is inconsistent with his recorded observations. For example, Dr. Thukral wrote that Plaintiff had only "mild to moderate limitations for pulling, pushing, lifting, carrying, or any other such related activities", but then checked a box indicating Plaintiff could never push or pull. *Compare id.* at 282 *to id.* at 285. The Court is far more convinced by Dr. Thurkal's observations than by his box-checking, as the ALJ was. The Court therefore finds that the substantial evidence within Dr. Thukral's report supports the ALJ's physical RFC finding.

Plaintiff urges the Court to consider Plaintiff's MRI report, which suggest Plaintiff received diagnoses of disc herniations and a degenerative disc disease. *Id.* at 293-94. The MRI report on its own, however, is not substantial evidence. It does not suggest how these diagnoses affect Plaintiff's life or how Plaintiff may or may not be restricted as a result. Without additional

explanation, the MRI alone does not sufficiently contradict the substantial evidence in the record that Plaintiff can walk and has use of his spine.

The Court therefore holds that the ALJ's physical RFC determination is supported by substantial evidence in the record. The Plaintiff's motion on this issue is DENIED and the Commissioner's motion is GRANTED.

### B. Substantial Evidence and Plaintiff's Psychological Limitations

Plaintiff also argues that the substantial evidence in the record of Plaintiff's psychological limitations does not support a finding that Plaintiff can perform "continuous, competitive employment." P's Memo at 9. Specifically, Plaintiff points out the report of Dr. Kushner, who found Plaintiff could not "maintain attention and concentration, [could not] maintain a regular schedule, [could not] learn new tasks, [could not] relate adequately with others, [could not] appropriately deal with stress, and [could not] mange his own funds." *Id.* Plaintiff argues this evidence supports a finding that Plaintiff is psychologically disabled.

In her decision, the ALJ discussed the findings of Dr. Kushner, but discredited them because the doctor's opinion was "inconsistent with the opinion of Dr. Maddux's report and the treating source's letter indicating that [Plaintiff's] functioning was mostly normal." R. at 17. Instead, the ALJ limited the Plaintiff to simple work on the basis of Dr. Maddux's report. *Id.* at 16. In that report, Dr. Maddux opined that Plaintiff "displayed a coherent and goal directed thought process," that Plaintiff's "sensorium was clear and he was oriented to person, place, and time." *Id.* Dr. Maddux also noted that Plaintiff's attention, concentration, recent, and remote memory skills were mildly impaired, but found that Plaintiff could "follow and understand simple directions and instructions, perform simple tasks independently without supervision, maintain a regular work schedule, learn new tasks appropriate to his current level of cognitive

12

functioning, perform complex tasks independently, make appropriate decisions, and relate adequately with others." *Id.* at 16, 243-44.

The Court finds that the ALJ's mental RFC determination is supported by medical substantial evidence. *See, e.g., Brown*, 174 F.3d at 62 (2d Cir. 1999) (citation omitted). As an initial matter, Plaintiff self-reported that he can shop on his own, go out on his own, pay bills, count change, handle a savings account, take care of his personal needs and grooming without reminders, and pray in the mosque three or four times a day. R. at 184-88. These are all evidence that Plaintiff does not suffer from mental problems that would interfere with his ability to hold a job. While Plaintiff did report that he sometimes has trouble remembering things, he nonetheless indicated that he remembered certain tasks, like personal care, on his own. *Id.* at 188-89. Further, Dr. Maddux's report indicates Plaintiff has no history of hospitalizations or outpatient psychiatric treatment. *Id.* at 241. Dr. Maddux also recorded observations of Plaintiff, including that he was "well groomed", his "gait, posture, motor behavior, and eye contact were appropriate", "[i]ntelligibility was fluent", his thought process was "[c]oherent and goal directed with no evidence of hallucinations, delusions, or paranoia", his sensorium was clear and he was oriented to person, place, and time. *Id.* at 242. While Dr. Maddux reported that Plaintiff's attention and concentration was "mildly impaired", as was Plaintiff's recent and remote memory skills, Plaintiff's judgment was reported as fair. *Id.* at 243. Ultimately, Dr. Maddux determined that Plaintiff could perform simple, repetitive tasks and could learn new tasks and could even perform complex tasks on his own, notwithstanding Dr. Maddux's prognosis as guarded. *Id.* at 234-44. These findings all support the ALJ's RFC.

Dr. Kushner similarly reported that Plaintiff's "[i]ntelligibility was fluent", that his thought process was "[c]oherent and goal directed", that his sensorium was clear and that he was

oriented "x3." *Id.* at 267-68. Dr. Kushner reported that Plaintiff could do simple calculations, which Dr. Maddux had not found, but nonetheless stated Plaintiff was more seriously impaired than Dr. Maddux had determined him to be. *Id.* at 268. Similarly, Dr. Kushner found Plaintiff had good insight and judgment, while Dr. Maddux had found he only had the latter. *Id.* Dr. Kushner relied on Plaintiff's self-reporting, but some of the facts Dr. Kushner relied on conflicted with Plaintiff's testimony before the ALJ and other evidence provided (such as whether Plaintiff never went out of the house versus went to the mosque 3 or 4 times a day). *Id.* at 268-69. Ultimately, Dr. Kushner found Plaintiff could perform simple tasks and make appropriate decisions, but that he could not maintain a regular schedule, learn new tasks, or deal appropriately with stress. *Id.* at 269. Plaintiff's self-reported self-grooming and trips to the mosque, however, shed doubt on at least the finding that Plaintiff cannot maintain a regular schedule. Further, it is unclear how Dr. Kushner's findings vary so widely from Dr. Maddux's when his observations are generally similar, occasionally better, and only occasionally worse. Ultimately, the majority of the reported observations also support the ALJ's RFC, and the inconsistent reported observations are not so serious as to undermine the substantial evidence that supports the ALJ's determination.

The Court therefore finds that the ALJ's mental RFC determination is supported by substantial evidence. *See, e.g., Brown*, 174 F.3d at 62 (2d Cir. 1999) (citation omitted). As a result, the Plaintiff's motion on this issue is DENIED and the Commissioner's motion is GRANTED.

## CONCLUSION

For the reasons stated herein, Plaintiff's cross-motion for judgment on the pleadings is DENIED, and Commissioner's motion for judgment on the pleadings is GRANTED. This matter is hereby dismissed. The Clerk of Court is respectfully instructed to close this case.

**SO ORDERED.**

s/WFK

HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated: April 16, 2015
Brooklyn, New York